W. A. MOUSSEAU, d/b/a ISLAND BLOCK & CONCRETE WORKS, Plaintiff and Respondent, v. JOHN KUILMAN, GENE CARROLL and GENE SMITH, Defendants and Appellants.

No. 9326.
Submitted February 28, 1957.  Decided April 15, 1957.
309 Pac. (2d) 1042.

Mr. Bruce M. Brown and Mr. Roland V. Colgrove, Miles City, for appellants.

Mr. F. F. Haynes, Forsyth, for respondent.

Mr. Brown and Mr. Hugh J. Lemire, Miles City, argued orally.

MR. CHIEF JUSTICE HARRISON:

Appellants Carroll and Smith leased a garage building from appellant Kuilman. On December 18, 1950, the respondent entered into a contract with the appellants for the construction of a metallic masterplate floor in the building to be used for roller skating. The contract called for a consideration of $3,960. Respondent began construction of the floor, and during the course of the construction he was paid the sum of $3,000 on the contract. On March 22, 1951, respondent filed this action, alleging completion of the floor, and demanded the balance of $960 due under the contract. Appellants filed a counterclaim alleging respondent failed to fulfill the terms of the contract, and demanded damages. By reply the respondent denied the counterclaim, and alleged that any damage to the floor was the result of appellants' negligence. Trial was had before a jury which returned a verdict for the respondent. Motion for new trial was had and denied. This appeal followed.

Appellants specify two errors. First in the giving of an instruction based upon the theory of wrongful interference with the completion of the contract, and second in excluding certain offered testimony.

Considering the first specification of error, the complaint of the respondent alleged in paragraph IV:

"That pursuant to the obligations fixed by the terms of said contract the plaintiff proceeded to do all work obligatory upon him under the terms of the contract and that he did such work as provided in said contract in a good, substantial and workmanlike manner, providing all of the materials necessary and properly and sufficiently completing and finishing said work."

This allegation was denied in the answer of the appellants, and in their counterclaim they alleged in paragraph IV:

"That the plaintiff did not fulfill said contract on his part, but on the contrary, constructed and poured said floor in so unskillful and unworkmanlike manner and of so unsuitable materials, that shortly after *its completion* the floor cracked and came apart causing holes in numerous places on said floor; that the finish on said floor flakes and scrapes off and said floor is useless for roller skating through the negligent and unskillful manner of its construction, and is of no value to the defendants."

In respondent's reply he alleged:

"The plaintiff denies the allegations of paragraph IV of said counterclaim, except to admit that the floor was badly damaged and alleges the fact to be that said damage was caused by the wrongful conduct of the defendants and through no fault or omission of the plaintiff."

The testimony developed that the pouring of the cement and application of the masterplate was finished on January 10, 1951. It was thereafter allowed to cure and a wax was then applied. The wax did not harden sufficiently and respondent contacted the manufacturer who advised its removal and the use of Sanaseal to cover the floor for hardening purposes. This was done and it was finally determined that the floor was ready for use and the roller skating rink was opened. Respondent gave certain instructions to the appellant with regard to the use of the floor and the manner of keeping it clean. Shortly after the opening, respondent went to the rink and found the

appellant cleaning the floor with water from a hose. He then notified them not to skate upon it until it had dried off, at which time appellant Carroll advised respondent the floor was dry. Respondent stated it could not be since it had been flooded shortly before, and he further told Carroll that if they skated on the floor they would take the responsibility. The floor was used for skating that evening in spite of respondent's objection. Respondent continued to work applying the Sanaseal to portions of the floor that required further treatment, but shortly thereafter on coming to the rink, he discovered appellant applying another type of sealer. He remonstrated to them but they continued to apply this sealer and advised respondent that the Sanaseal was no good. It appeared that this sealer filled the pores in the floor so that further applications of Sanaseal could have no effect. The floor continued to be used as a roller rink until the latter part of May when it was shut down. Appellants thereafter lost their lease, the building was sold, the floor removed and dumped.

There is conflict in the testimony throughout as to the actions of the parties in connection with the floor, but no objections were made at any time to proof by the respondent of the actions of the appellants which stopped him from further trying to remedy the portions of the floor which appeared to flake or dust. At the very commencement of the cross-examination of the respondent by appellants' counsel, this statement appears in the record made by respondent's counsel: "I respectfully submit the witness answered he never completed the floor due to the interference of these defendants." The case was tried on that theory, respondent showing in detail all the things done by appellants which forced him to stop his efforts to fix the portions which seemed to require further treatment.

At the close of respondent's case, the appellants were fully advised of the theory of the case by respondent. No claim of variance, between the allegation in the pleading and the proof, was made and nothing appears in the record to indicate that appellants had been misled to their prejudice. No motion for

nonsuit was made at the close of respondent's case. This situation has been before this court and we have stated:

"That this testimony established the injury and damage of plaintiff (injury, however, was admitted by the answer), and that the negligence of defendant was the proximate cause thereof, and that a *prima facie* case had been made, was inferentially admitted by defendant, for he did not move for a nonsuit, a dismissal, a judgment, nor ask for any other relief when plaintiff rested his case." Williams v. Hample, 62 Mont. 594, 205 Pac. 829, 830.

"That plaintiff's complaint was sufficient, and that its evidence made a *prima facie* case, is admitted by defendant's failure to attack the complaint or to move for relief at the close of plaintiff's case." Stoltze Land Co. v. Westberg, 63 Mont. 38, 206 Pac. 407, 408.

Appellants chose to proceed, and in their case explained their version of the interference claimed by respondent.

From the evidence produced at the trial, the question of ▮▮▮ whether or not the appellants had prevented respondent from fully completing his work under the contract became in effect the main issue.

Respondent offered the following instruction:

"You are instructed that where one is prevented from performing his obligations under a contract by the wrongful interference, if any, of the other party or parties to the contract, then the party whose performance is thus interfered with may treat the wrongful act of interference with his performance of the contract as terminating his duties thereunder and sue for the balance due him, if any, under the terms of the contract."

The court gave the instruction over the objection of the appellants who then contended that the theory of the case was that respondent completely performed and completed the contract. Also, that the giving of this instruction presented a theory of recovery on a wrongful prevention of performance which was a different theory and would be a material variance, and not the theory set forth in the complaint, and that it was

not a case where there was any prevention of performance under respondent's complaint.

"Under the 'theory of the case' doctrine, if the parties, by their own mutual act and acquiescence, try out issues not formally pleaded, the trial court should submit, under proper instructions, such issues. Des Moines Asphalt Paving Co. v. Lincoln Place Co., 201 Iowa 502, 207 N.W. 563." Pease v. Citizens' State Bank of Earlham, 204 Iowa 70, 214 N.W. 486, 487.

"We have recognized the rule in this state that where voluntary issues are presented by the parties without sufficient pleading, the court should fairly present the question involved to the jury, and that although there be no request made by counsel for instruction, it is still the duty of the court to so charge the jury concerning the law of the case that it shall have a clear and intelligent comprehension of what it is to decide. [Citing Cases.]" Des Moines Asphalt Paving Co. v. Lincoln Place Co., 201 Iowa 502, 207 N.W. 563, 565.

"The principal objections to the instructions given are that they are not based on issues made by the complaint and answers, but it is a sufficient answer to these objections to say that the instructions were based on evidence admitted without objection as if upon sufficient pleadings. In such cases the court will treat the pleadings as the parties themselves have treated them, as sufficiently broad to warrant the introduction of the evidence." Johnson v. Caughren, 55 Wash. 125, 104 Pac. 170, 171.

In 53 Am. Jur. 454, section 576, appears the following statement:

"While it is the general rule that the instructions should be confined to the issues made by the pleadings and the evidence, and there are holdings to the effect that an instruction presenting a theory for recovery made relevant by some evidence is bad where the evidence was erroneously admitted because unwarranted under the complaint or declaration, according to the weight of authority it is not error to give instructions based on evidence as to acts not alleged, and admitted without ob-

jection; in other words, the trial court may properly charge the jury as to matters which at the trial are treated by both parties as being in issue and concerning which substantial evidence is introduced without objection, although such matters may have been insufficiently pleaded or may not have been pleaded at all. In such cases, the court will treat the pleadings as the parties themselves have treated them, as sufficiently broad to warrant the introduction of the evidence.''

Under the evidence presented without objection in this case, we subscribe to the foregoing authority and hold, that by their actions herein, appellants waived the variance between pleading and proof, and the court correctly submitted the case to the jury upon the theory of the case adopted by all parties during the trial.

The second specification contends error in excluding the ▮ testimony of Carol Larson and in denying the motion to re-open the case to permit him to testify.

The witness Larson was a practical builder, familiar with concrete work and general contracting. The evidence in the case disclosed that the appellants had terminated their lease and the floor had been taken from the building and destroyed. The contract provided that the respondent guarantee the floor, as to workmanship and materials, for roller skating and other recreational purposes only, for a period of one year. The floor, as described in the contract, was to be a metallic masterplate floor in accordance with the plans and specifications attached to the contract.

The witness had testified that he had checked the floor and advised that it could not be repaired. He further stated in answer to the question: ''There was nothing you could do to repair it? A. No. So we went back to Kuilman's office. That is all we looked at was just the upper end. In awhile there I figured up what it would cost to take it out, that is, give him a firm bid on taking it out and putting in a new floor there that I would guarantee. Q. What was that?''

Counsel for respondent objected to the question and answer

and the objection was sustained. The following question was then asked: "Q. Let me ask you this question. Do you know what the reasonable cost would be to install a floor at the Kuilman garage of a size of 6,400 square feet which as to materials and workmanship would last for roller skating purposes for a period of one year?"

This question was objected to on the grounds there was no foundation laid, incompetent, irrevelant under the pleadings, and that under the theory of the pleadings it would have nothing to do with it in view of the evidence that one of the appellants had sold the property short of a year. This objection was sustained.

The question entirely overlooks the type of floor specified in the contract, being a metallic masterplate floor, and is directed only to materials, workmanship and roller skating purposes for the period of one year. Under the contract, there was no foundation for testimony along the line here being offered, and the objection was properly sustained.

After each side had rested, the appellants moved the court for permission to reopen the case to recall this witness, which request was denied.

Upon cross-examination of this witness, it developed that all he knew about masterplating was what he read in their advertisements. He had never personally used it. He had never known of masterplating being used for surfacing for roller skating purposes; and he had never constructed a roller skating floor. Since the witness was not qualified to testify with regard to the type of floor contracted to be furnished in this instance, the motion to reopen was properly denied.

The judgment is affirmed.

MR. JUSTICES CASTLES, BOTTOMLY, ANGSTMAN, and ADAIR, concur.